OPINION
{¶ 1} Defendant-appellant, James L. Gaven, appeals from a sentence imposed by the Franklin County Court of Common Pleas. On July 21, 2005, the Franklin County Grand Jury returned a four-count indictment against appellant. Count 1 of the indictment charged appellant with felonious assault, R.C.2903.11, a felony of the second degree. Count one also included two specifications: (1) that appellant used a firearm in committing the felonious assault, R.C. 2941.145; and (2) that the felonious assault included an element that appellant knowingly caused or attempted to cause death or physical harm to another and did so by discharging a firearm from a motor vehicle, R.C.2941.146. Specification one carried a mandatory three-year term of imprisonment while specification two required imposition of an additional five years.
 {¶ 2} Count 2 of the indictment alleged that appellant knowingly discharged a firearm into an occupied structure, the habitation of another person, a so-called "drive-by shooting." Count two included specifications that appellant committed the crime with a firearm, R.C. 2941.145 and that the crime was committed by discharging the firearm from a motor vehicle, R.C.2941.146.
 {¶ 3} Count 3 of the indictment charged appellant with discharging a firearm into the habitation of another person, R.C.2923.161. Count three also contained firearm specifications under R.C. 2941.145 and 2945.146.
 {¶ 4} Count 4 of the indictment alleged that appellant improperly handled a firearm while in a motor vehicle, R.C.2923.16, also with a firearm specification under R.C. 2941.145.
 {¶ 5} The case proceeded to trial by jury on January 19, 2006 where the following evidence was presented. Around 11 p.m. on July 9, 2005, Dwayne Henry, some friends and his two brothers, Demawn and Deandre, were in front of their mother's home at 66 Stevens Avenue, Columbus, Ohio. Dwayne noticed a green Ford traveling down Stevens Avenue. Although it was nighttime, the headlights of the car were not on. At the end of the street, the car turned around and drove back. Witnesses saw a hand with a gun reach out of the passenger car window and fire. Dwayne was shot through the hand. Other bullets struck neighboring houses and cars.
 {¶ 6} Rush Deal testified that bullets struck both his home at 58 Stevens and his car. Neighbor Fred Gussler also saw the green Ford drive slowly down the street and witnessed the shooting. A bullet also struck Gussler's home. In addition, bullets from the passing car hit a vehicle and a residence at 64 Stevens Avenue.
 {¶ 7} Demawn Henry reported that he could see the person who fired the weapon because the porch light was on and there was a streetlight in front of the house. Demawn identified the shooter as an individual he knew as "Juicy," someone he recognized from school. Demawn testified that "Juicy" had telephoned him before the shooting, said that he knew where Demawn's mother lived and threatened to shoot up her home. According to Demawn, after the shooting occurred, he telephoned appellant who admitted he was the person who fired the gun.
 {¶ 8} Demawn's mother, Idella Jenkins, called the police the next day and advised them that "Juicy's" first name was actually James. Investigators were able to identify appellant as a suspect in the shooting. Demawn was shown a photo array and identified appellant as the person who fired the gun from the moving car. Appellant was arrested on July 14, 2005.
 {¶ 9} Appellant testified on his own behalf and denied involvement in the shootings. His mother, Marsha Gibson, testified he was with her on the day of the shooting.
 {¶ 10} The jury found appellant guilty on all counts and specifications. Appellant was sentenced to a term of six years on count one, felonious assault, plus an additional, consecutive term of five years on specification two, or a total of 11 years. Appellant was sentenced to a term of five years for each count of improperly discharging a firearm into an occupied structure and a term of 11 months for improperly handling a firearm in a motor vehicle. The trial court found that all specifications merged for purposes of sentencing. Counts 2 and 3 of the indictment were ordered to be served concurrently to each other, but consecutively to count one. The court ordered that Count 4 of the indictment would be served concurrently with the other counts. The total sentence imposed was 16 years.
 {¶ 11} Appellant timely appealed and asserts one assignment of error:
Appellant's conviction is against the manifest weight of the evidence.
 {¶ 12} On appellate review of a claim that a verdict is against the manifest weight of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. As such, the appellate court convenes as a "thirteenth juror" to review the entire record and all submitted evidence to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, at 387.
 {¶ 13} Appellant contends that "[a] fair reading of the record discloses a history of animosity [between appellant and Demawn Henry] that renders the reliability of [Demawn's] testimony highly questionable." (Appellant's brief, at 8.) Appellant does not specify portions of the record where this might be gleaned. However, for purposes of this appeal, we will assume that there was evidence before the jury that could show there was some animosity between Demawn Henry and appellant. Appellant notes that the police did not obtain his fingerprints before his arrest, did not find the car or gun used in the shootings and did not search appellant's home. Coupled with his denial and his mother's account of his whereabouts, appellant argues that the more credible evidence negates the testimony of Demawn Henry and the jury lost its way in finding appellant guilty.
 {¶ 14} Although appellant strives to explain away the eyewitness testimony of Demawn Henry, the factors appellant relies upon were properly before the jury as trier of fact. The Supreme Court of Ohio has provided a guideline for determining whether eyewitness identification is reliable and sufficient evidence for conviction:
* * * In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. * * *"
State v. Davis (1996), 76 Ohio St.3d 107, 113.
 {¶ 15} Demawn had sufficient opportunity to identify appellant both in the amount of time for observation and under sufficient lighting conditions. Both streetlights and his porch light were on, providing adequate lighting when appellant drove slowly past Demawn's home. Moreover, Demawn knew appellant from school. When police arrived to investigate shortly after the shootings occurred, Demawn told them that the person who fired the gun was named "Juicy" and that he had "Juicy" tattooed on his neck. Demawn identified appellant from a photo array. We find that the circumstances surrounding Demawn's identification of appellant satisfy the test set forth in Davis.
 {¶ 16} We also note that Demawn testified that appellant called him before the shooting, that appellant said he knew where Demawn's mother lived and threatened to shoot up her house. After the shooting, Demawn said he called appellant, who admitted he was the gunman.
 {¶ 17} It is well-established that the weight and credibility to be given to testimony is primarily a question for the trier of fact, the jury in this case. State v. DeHass (1967),10 Ohio St.2d 230. Based upon the evidence and testimony presented, we cannot say that the jury "lost its way" in finding appellant guilty. A verdict may only be reversed in the "exceptional case in which the evidence weighs heavily against the conviction."Thompkins, supra, at 387. Having reviewed the record, we do not find this to be an "exceptional case" that would warrant reversal.
 {¶ 18} Appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and McGrath, JJ., concur.